**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FERNANDO FONSECA, JR.,** | : | |
| **BRADLEY L. MERWINE,** | | |
| **WILLIE JAMES BROWN,** | : | |
| **Plaintiffs** | : | **CIVIL ACTION NO. 3:19-1427** |
| **v.** | : | **(JUDGE MANNION)** |
| **GENE BERDANIER, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

## I. Background

Seventeen inmates, all housed in Schuylkill County Prison, Pottsville, Pennsylvania, filed the above captioned action pursuant to 42 U.S.C. §1983. (Doc.1). The named Defendants are fourteen correctional officers employed at Schuylkill County Prison and William Baldwin, Schuylkill County Prison Board President. Id. The Plaintiffs make the following ten claims regarding the conditions of the Schuylkill County Prison:

> 1. There is mold growing in the cinder block near the showers.
>
> 2. The ceiling tiles have fell and are falling in the block and above tables where individuals eat with particles that fall from ceiling.

1

3. There are electric extension cords bare in the shower area attached to the railing which is rust.

4. The kitchen is not serving the proper portion of food and inmates are being mal nutriented (sic) and deprived of the proper amount of calories required per meal per day.

5. There is no air circulation. The windows and sills are cluttered with debris and there is no air circulation; even the guards say its inhumane.

6. Inmates are sold instant coffee but not supplied hot water to drink it. The same is sold Ramen soup but not given hot water to make them.

7. There's toilet paper and debris hanging from the ceiling and it sometimes falls into individual food or onto individuals. It's extremely unsanitary.

8. Inmates that feel it's to hot to go out to yard are forced to lock in cells that are atrocious with heat and no air circulation.

9. No cold water is supplied on the block or in the yard for inmates to drink to re-hydrate.

10. The heat and living conditions of this facility are/is inhumane.

(Doc. 1). Plaintiffs claim that they have "been sick, vomiting, heat stroke and exhausting, difficulty breathing at times and constant headaches".

Id. For relief, Plaintiffs seek to have:

"the ceiling repaired, the mold removed, the cinder blocks broke out and replaced, the debris on the ceilings wiped

2

off/brushed off, the amount of food being served to be monitored to make sure the proper portion is being served, some type of coolant or ventilation system put in and windows cleaned out so air can come through the screens or windows, welded close and air conditioning system installed, hot water keep on the block or a 180° line put in or microwave and 24,000,000 for medical expenses and bills that could possibly arise in the future from breathing in the germs of the mold and to divide amongst inmates that were affected by and mistreated through these conditions we'd like some type of step welded onto the beds for people to get up and down the bunks, plates so inmates can't roll off top bunks and get hurt".

Id.

By Order dated August 19, 2019, this Court issued an Administrative Order, requiring each Plaintiff to file a completed and signed Application to Proceed *In Forma Pauperis*, or pay the filing fee, within thirty days. (Doc. 5). Plaintiffs Fonseca, Merwine, and Brown were the only Plaintiffs to submit individual applications, requesting leave to proceed *in forma pauperis* under 28 U.S.C. §1915. Consequently, by Memorandum and Order dated December 11, 2019, the applications to proceed *in forma pauperis,* filed by Plaintiff's Fonseca, Brown and Merwine, were granted, all remaining Plaintiffs were dismissed from the

action and Plaintiffs' claims for injunctive relief were dismissed as moot. (See Docs. 40, 41).

On January 23, 2020, Defendants filed a motion to dismiss Plaintiffs' complaint, in which Defendants address the merits, as well as argue that Plaintiff's action should be dismissed for Plaintiff's failure to properly exhaust his administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a). (Doc. 48).

On July 2, 2020, in accordance with Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018), (holding that the District Court shall provide the parties notice that it will consider exhaustion in its role as fact finder under Small v. Camden Cty., 728 F.3d 265 (3d Cir. 2013)), this Court issued an Order, allowing the parties an opportunity to supplement the record with supporting evidence relevant to the exhaustion of administrative remedies. (Doc. 50).

On July 15, 2020, Defendants filed a statement of uncontested facts and a memorandum of law in support. (Docs. 53, 54). On July 28, 2020, Plaintiff, Bradley Merwine, filed a brief in opposition to Defendants' supplemental brief and statement of facts. (Doc. 57).

4

On July 16, 2020, this Court's July 2, 2020 Order, was returned as undeliverable to Plaintiffs Fonseca and Brown, noting that the inmates were not located at SCI-Schuylkill and the mail was unable to be forwarded.[1] (Docs. 55, 56).

Defendants' motion is ripe for disposition. For the reasons set forth below, the Court will grant Defendants' motion to dismiss.

## II. **Motion to Dismiss**

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain

---

[1] In addition to Plaintiffs' failure to properly exhaust administrative remedies, Plaintiffs Fonseca and Brown should be dismissed from the above captioned action for failure to comply with their obligation to inform the Court of an address change. (See Doc. 4).

statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (*per curiam*).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief"." Id. at 211 (quoted case omitted).

6

### III. <u>Statement of Undisputed Facts Regarding Exhaustion</u>

The Schuylkill County Prison has an inmate grievance procedure. (<u>See</u> Doc. 51 at 5). The process first requires the inmate to write out the complete grievance as specific as possible soon after the alleged occurrence and submit the grievance to the Deputy Warden, as Grievance Coordinator. <u>Id</u>. An inmate dissatisfied with the response to their grievance has the right to appeal the decision, which must be submitted in writing to the Warden within ten (10) days after the response to the grievance is received. <u>Id</u>. The Warden's decision on the appeal will be final. <u>Id</u>.

A review of all grievances filed since June 7, 2018, reveal that out of the three Plaintiffs, Fernando Fonseca, is the only Plaintiff ever to file a grievance. (Doc. 51 at 3). On September 17, 2018, Plaintiff, Fonseca, filed Grievance 1166, regarding the top bunk in his cell. (Doc. 51 at 13). Plaintiff claimed that the bunk was caving in and collapsed on top of him, in spite of him complaining to maintenance about the bunk. <u>Id</u>. The grievance was denied on October 3, 2018 by the Deputy Warden and no appeal was taken. <u>Id</u>. No other grievance was filed by any of the Plaintiffs regarding the conditions complained of in their complaint.

## IV. <u>Discussion</u>

Under the PLRA, a prisoner must pursue all available avenues for relief through the prison's grievance system before bringing a federal civil rights action. <u>See</u> 42 U.S.C. §1997e(a); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997(e) provides, in relevant part "[n]o action shall be brought with respect to prison conditions under section 1983 of the Revised Statutes of the United States, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. §1997(e). The exhaustion requirement is mandatory. Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); Booth, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"). Moreover, while Plaintiff was released from prison after filing the above-captioned case (Doc. No. 10), he is still bound by the exhaustion requirement because he has raised claims concerning events that occurred prior to his release. <u>See</u> Ahmed v. Dragovich, 297 F.3d 201, 210 (3d Cir. 2002).

8

The United States Court of Appeals for the Third Circuit has further provided that there is no futility exception to §1997e's exhaustion requirement. Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board administrative exhaustion by inmates who seek to pursue claims in federal court. Id. Additionally, courts have imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. See e.g., Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000).

This broad rule favoring full exhaustion allows for a narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's]

9

failure to exhaust as the statute requires." Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Warman, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005). Nor can an inmate avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. Warman, 49 F. App'x at 368. Thus, an inmate's confusion regarding these grievance procedures does not, standing alone, excuse a failure to exhaust. Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003); see also Marsh v. Soares, 223

F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.' ") (citations omitted).

The Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust can be excused. See Ross v. Blake, 136 S. Ct. 1850 (2016). The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Id. at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." Id. Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation. Id. at 1860.

The Third Circuit recently joined other circuits to hold "that administrative remedies are not 'available' under the PLRA where a prison official inhibits an inmate from resorting to them through serious

11

threats of retaliation and bodily harm." Rinaldi v. United States, 904 F.3d 257, 267 (3d Cir. 2018). To defeat a failure-to-exhaust defense based on such threats, "an inmate must show (1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate." Id. at 269.

Finally, failure to exhaust is an affirmative defense that must be pled by the defendant. Jones v. Bock, 549 U.S. 199, 216 (2007). Once defendants present evidence of a prisoner's failure to exhaust, the burden of proof shifts to the inmate to show that exhaustion occurred or that administrative remedies were unavailable. Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018). "Both the [United States] Supreme Court and [the Third Circuit Court of Appeals] have rejected judge-made exceptions to the PLRA." Downey, v. Pa. Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020). District courts may not "excuse [a prisoner's] failure to exhaust." Ross, 136 S. Ct. at 1856 (rejecting a "special circumstance" exception). Likewise, district courts do not have the authority "to excuse compliance with the exhaustion requirement, whether on the ground of

12

futility, inadequacy or any other basis." Nyhius v. Reno, 204 F.3d 65, 71 (3d Cir. 2000).

Here, Defendants argue that Plaintiffs' grievance record demonstrates that none of the three Plaintiffs filed any grievances regarding the conditions of confinement complained of in their complaint. Thus, they failed to properly exhaust their administrative remedies prior to filing the instant action.

In opposition, Plaintiff, Merwine, the only Plaintiff to oppose Defendants' motion, concedes that he did not exhaust his administrative remedies prior to filing the instant action. (Doc. 57). He claims that the Schuylkill County Prison "does not have a fair and unbiased proper grievance procedure" because, "requesting a grievance form usually takes up to 3 to 5 days to receive " and "furthermore it is a single page grievance paper not even a form." Id. Additionally, Plaintiff claims that "it would be a conflict of interest grieving the same individuals the inmate is grieving." Id.

Unfortunately, Merwine's belief that the pursuit of the administrative remedy process was futile or needless, does not excuse his failure to exhaust his available administrative remedies. Rather, as the forgoing

13

discussion demonstrates, Merwine is excused from exhausting his administrative remedies prior to bringing his federal action only if he can demonstrate that the administrative review process was "unavailable." Ross, 136 S. Ct. at 1859 (2016).

Based on the record before this Court, Merwine has not demonstrated that the Schuylkill County Prison's administrative remedy process was unavailable to him. Nor does he suggest that any of the named Defendants interfered with his ability to complete the grievance process. Thus, the record is clear that Plaintiffs did not exhaust his administrative remedies <u>prior</u> to filing the instant action, and Defendants' motion to dismiss will be granted.

## VI. <u>Conclusion</u>

For the reasons set forth above, the Court will grant Defendants' motion to dismiss for Plaintiffs' failure to exhaust administrative remedies.

A separate Order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 10, 2021**
19-1427-02

14